USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/17/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
LILIANA BARRIOS-CONTRERAS,

                Plaintiff,

   -v.-

BIG FISH ENTERTAINMENT LLC; DAN CESAREO; RASHEED DANIELS; MAX MILLER; CHARMAINE WALKER; VAN JOHNSON; COREY ROBINSON; DOES I through X, and ROE,

                Defendants.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**

23-CV-5821 (JGLC) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Jessica G. L. Clarke, United States District Judge:**

Plaintiff Liliana Barrios-Contreras, proceeding *pro se*, brings this case alleging unlawful gender and racial discrimination in violation of federal, state, and clocal law, defamation, and several other causes of action against the production company of a television show on which she was a cast member, Big Fish Entertainment, LLC ("Big Fish"), its president Dan Cesareo, and several former employees of Big Fish. Defendants Big Fish and Cesareo (the "moving defendants") now move to compel mediation or arbitration under the Federal Arbitration Act (the "FAA") and staying this action or, in the alternative, to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted. For the reasons below, the motion to compel arbitration should be granted.

1

# I. BACKGROUND

**A. Facts and Procedural History**[1]

Big Fish was the producer of a reality television show titled *Black Ink Crew – Chicago* (the "Show"). Amended Complaint ("Am. Compl.") ¶ 5, Dkt. No. 37. Barrios-Contreras was a cast member of the Show from August 2017 until July 2020. Declaration of Rocky Bronzino dated December 22, 2023 ("Bronzino Decl.") ¶ 7, Dkt. No. 33. When she accepted a part on the Show, Barrios-Contreras signed a contract that included a clause requiring her to resolve all disputes arising from the contract in arbitration. Bronzino Decl. Ex. A (the "Agreement"), Dkt. No. 31-1. During her time on the Show, Barrios-Contreras alleges that she was subjected to repeated sexual harassment by other, more senior cast members and Big Fish executives. Am. Compl. ¶¶ 35–51. Barrios-Contreras reported the harassment to Big Fish, but she alleges that no actions were taken to stop the harassment. *Id.* ¶ 44.

Barrios-Contreras, who is Mexican-American, also claims that the Show's producers manufactured an on-screen conflict with another cast member, defendant Walker, who is African-American, in order to portray Barrios-Contreras as racist and defame her character. *Id.* ¶¶ 72–82.

---

[1] "In the context of motions to compel arbitration brought under the [FAA] . . . the court applies a standard similar to that applicable for a motion for summary judgment," *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003), "and courts may therefore consider materials outside the complaint, including the arbitration agreement itself." *Alfonso v. Maggies Paratransit Corp.*, 203 F. Supp. 3d 244, 247 (E.D.N.Y. 2016). Therefore, the Court relies on materials outside Barrios-Contreras's pleadings in adjudicating this motion.

Barrios-Contreras was terminated from the Show in 2019, although episodes featuring her continued to air through 2020. Bronzino Decl. ¶ 12. Barrios-Contreras contends that this termination was in retaliation for her complaints about sexual harassment and due to her race. Am. Compl. ¶ 109.

Following her appearance at a Show-related party in 2020, Big Fish released a statement denying foreknowledge of Barrios-Contreras's attendance and declaring that she had been removed from the Show "because of [her] past racial insensitivity." Am. Compl. ¶ 82.

On July 6, 2023, Barrios-Contreras filed this case, without first going through arbitration. Dkt. No. 1; Defendants Big Fish Entertainment LLC's and Dan Cesareo's Memorandum of Law In Support of the Motion to Compel Mediation and/or Arbitration and Stay Action or, in the Alternative, to Dismiss the Complaint for Failure to State a Claim ("Def. Mem.") at 9, Dkt. No. 32. She alleges that Big Fish and its employees and/or agents violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.* ("NYSHRL"), New York City Human Rights Law, N.Y.C. Admin. Code § 8–107 *et seq.* ("NYCHRL"), breached their contract with her, violated federal copyright law, committed common-law defamation and slander, and intentionally inflicted emotional distress. She seeks monetary damages and injunctive relief. Am. Compl. ¶ 1.[2]

---

[2] Plaintiff also alleges violations of New York's enterprise corruption law, N.Y. Penal Law § 460, and 18 U.S.C. § 1001 by "obstruction of criminal investigations," and several other state and federal criminal laws. Am. Compl. ¶ 1.

3

The moving defendants were served on October 31, 2023. Dkt. Nos. 20–21. The other defendants—Rasheed Daniels, Max Miller, Charmaine Walker, Van Johnson, and Corey Robinson—have not been served. Dkt. Nos. 15–19, 22–23. On December 21, 2023, the Court granted an extension until February 15, 2024 to serve the remaining defendants. Dkt. No. 25. On February 12, 2024, Barrios-Contreras requested an order of substituted service on the unserved defendants. Dkt. No. 46. This request was denied without prejudice as Barrios-Contreras proposed serving these defendants at the same location as the previous unsuccessful service attempts. Dkt. No. 48. There have been no subsequent attempts to serve the non-moving defendants.[3]

On December 26, 2023, the moving defendants filed the instant motion. Dkt. No. 30. In support, they filed a memorandum of law and the Bronzino Declaration, along with exhibits. On January 11, 2024, Barrios-Contreras submitted a "Motion in Opposition to Dismiss/Amended Complaint and Answer to the Declaration of Rocky Bronzino II in Support of Defendants" ("Am. Compl."), which she clarified was intended to be an amended complaint. Dkt. Nos. 37, 42. In support, she filed

---

As these are criminal laws, which are only enforced by the government, not by private parties, they will not be addressed in this Report and Recommendation. Barrios-Contreras also makes a passing reference to the Adult Survivors Act of 2022, C.P.L.R. § 214-j, but she does not again mention this statute as the basis for any claim. *Id.*

[3] Accordingly, the Court should *sua sponte* dismiss without prejudice the case against the unserved named defendants, as well as the Doe and Roe defendants, under Rule 4(m) of the Federal Rules of Civil Procedure. *See, e.g., Awan v. Experienced Moving Co.*, No. 18-CV-5137 (MKB) (VMS), 2019 WL 5088068, at *2 (E.D.N.Y. Aug. 23, 2019) (dismissing *pro se* case under Rule 4(m)), *adopted by* 2019 WL 5086687 (Oct. 9, 2019).

the Declaration of Liliana Barrios-Contreras dated January 9, 2024 ("Barrios-Contreras Decl."). Dkt. No. 38. The case was then stayed pending a mediation in the Court's Mediation Program, which was unsuccessful. Dkt. Nos. 41, 53.

On June 10, 2024, defendants filed their reply memorandum of law ("Def. Reply") and Reply Declaration of Rocky Bronzino II in Further Support of Big Fish Defendants' Motion to Compel Arbitration and Stay Action or, in the Alternative, to Dismiss the Complaint for Failure to State a Claim dated June 7, 2024 ("Bronzino Reply Decl."). Dkt. Nos. 60, 60-1. On June 25, Barrios-Contreras filed a Motion in Support to Oppose Arbitration ("Pl. Opp."), Dkt. No. 65, and Motion for Leave to Amend. Dkt. No. 66. On June 27, she filed the Reply Declaration of Liliana Barrios-Contreras in Support of Motion to Oppose Arbitration and Motion to Amend Complaint ("Pl. Opp. Decl."). Dkt. No. 67. On July 5, 2024, the moving defendants filed a letter responding to Barrios-Contreras's latest submissions ("Def. Sur-Reply"), Dkt. No. 68.

**B. Legal Standards**

The Federal Arbitration Act governs written arbitration provisions in contracts that "affect" commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 268 (1995). Under the FAA, an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. Pursuant to the FAA, "prior to compelling arbitration, the district court must first determine . . . [whether] the parties enter[ed] into a contractually valid arbitration agreement." *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel,* 346 F.3d 360, 365 (2d Cir. 2003). "When

5

deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). *See also Perry v. Thomas,* 482 U.S. 483, 492 n.9 (1987) ("A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law."). And while "[t]he Act places arbitration agreements 'upon the same footing as other contracts,'" *Schnabel v. Trilegiant Corp.,* 697 F.3d 110, 118 (2d Cir. 2012) (quoting *Scherk v. Alberto–Culver Co.,* 417 U.S. 506 (1974)), "it 'does not require parties to arbitrate when they have not agreed to do so.'" *Id.* (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.,* 489 U.S. 468, 478 (1989)).

The Second Circuit has established a two-part test for determining whether claims are arbitrable: "(1) whether the parties agreed to arbitrate disputes at all; and (2) whether the dispute at issue comes within the scope of the arbitration agreement." *ACE Capital RE Overseas Ltd. v. Central United Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Oganesyan v. Tiffany & Co.*, No. 23-CV-4287 (JGLC), 2023 WL 7928098, at *3 (S.D.N.Y. Nov. 16, 2023) (quoting *Green Tree Fin. Corp. Alabama v. Randolph*, 531 U.S. 79, 91 (2000)).

The FAA "directs a federal court to order parties to proceed to arbitration if there has been a failure, neglect, or refusal of any party to honor an agreement to

6

arbitrate." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974) (internal citations omitted). Section 3 of the FAA further provides that the court "shall . . . stay the trial of the action until such arbitration has been had[.]" 9 U.S.C. § 3.

Finally, given that Barrios-Contreras is *pro se*, the Court must liberally construe her pleadings and briefs, reading such submissions "to raise the strongest claims [they] suggest[]." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (quotation marks omitted).

## II. DISCUSSION

### A. The Parties Agreed to Arbitrate any Disputes Arising from Barrios-Contreras's Work on the Show and All of Her Claims Fall Within the Scope of the Arbitration Clause

In support of their motion, the moving defendants have provided the Court with a copy of the Agreement that Barrios-Contreras entered into to obtain her role on the Show. Included in the Agreement's terms is a clause stating that:

> [I]n the event of any dispute concerning the performance or enforceability of this Agreement, and/or concerning the respective rights of the parties hereto, such dispute shall be the subject of mandatory mediation and/or binding arbitration pursuant to the terms of the separate "**Agreement to Mediate and Arbitrate,"** attached hereto as Exhibit E. **I UNDERSTAND THAT EXHIBIT E WAIVES MY RIGHT TO SUE COMPANY, VMN,[4] AND ANY OTHER ASSIGNEE IN A COURT OF LAW AND REQUIRES ME TO ASSERT ANY CLAIMS OR GRIEVANCES IN ARBITRATION. I KNOWINGLY AND VOLUNTARILY WAIVE MY RIGHT TO A JURY TRIAL OR COURT TRIAL AND FREELY CONSENT TO THE TERMS OF EXHIBIT E AS A MATERIAL TERM OF THIS AGREEMENT.**

---

[4] VMN refers to Viacom Media Networks, the company that hired Big Fish to produce the Show.

Agreement ¶ 20. Exhibit D to the Agreement states that:[5]

> All claims, controversies or disputes arising out of, in connection with, or relating to this Agreement, the performance or breach thereof or default hereunder, whether based on contract, tort, or statute, including, without limitation, any claim that this Agreement was induced by fraud (the "Covered Claims"), shall be resolved by mediation and, if necessary, binding arbitration in New York, New York in accordance with the following terms and conditions.

Agreement at 14. On its face, the Agreement meets the first prong set forth in *Ace Capital*: that Barrios-Contreras and Big Fish agreed to arbitrate any dispute.[6]

The Court must next determine whether the allegations raised by Barrios-Contreras in her pleadings fall within the scope of the arbitration clause. *See, e.g., Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.,* 252 F.3d 218, 225–27 (2d Cir. 2001) (arbitration provision applying to "any dispute arising from" agreement was broad). This part of the test is met as well.

All of Barrios-Contreras's claims relate to or arise from her employment on the Show. Big Fish is the company that produced the Show and Dan Cesareo is its president. Am. Compl. ¶¶ 5–12. The allegations concerning her termination and the moving defendants' breach of contract and/or fraud in her compensation by definition relate to her work on the Show. The alleged sexual harassment and discrimination was committed by Show employees and/or cast members while the

---

[5] While the Agreement states that the arbitration clause is appended as Exhibit E, in the papers provided by the moving defendants, the relevant attachment is labeled Exhibit D.

[6] The Agreement also implicates interstate commerce, as Big Fish is a New York company, headquartered in New Jersey, and it produced the Show in Illinois, where Barrios-Contreras appeared. *See* Def. Mem. at 5; Bronzino Decl. ¶ 3.

8

Show was being produced. *Id*. at ¶¶ 35–51, 55–58. Similarly, Barrios-Contreras's claims of gender discrimination all arose from the production of the Show. *Id*. ¶¶ 59–61. The alleged racial discrimination also arose out of her role on the Show. *Id*. ¶¶ 71–80. The moving defendants' alleged statement on her "past racial sensitivity" that serves as the basis for both her defamation claim and her copyright infringement claim, while it occurred while she was no longer a cast member, also "relate[d] to [the] Agreement," as Big Fish issued the statement because of her presence at a Show event and her prior role. *Id*. ¶ 72.[7] Her intentional infliction of emotional distress claims also arose out of her work on the Show. *Id*. ¶¶ 156–57. In sum, while Barrios-Contreras asserts many claims, each one fundamentally arises out of her work on the Show and is therefore covered by the Agreement's arbitration clause.[8]

Barrios-Contreras does not challenge the authenticity of the Agreement or her signature, contend that its terms fail to cover the allegations at issue, or argue that she attempted to go through the arbitration process before bringing this case. Instead, she argues that the Agreement is not valid because it was unconscionable,

---

[7] Barrios-Contreras in fact alleges that she was invited by the Show's producers to participate in the Show event that resulted in the allegedly defamatory statement, which further demonstrates that the claim arose out of her participation on the Show. Am. Compl. ¶¶ 83–84.

[8] Furthermore, any issues concerning the scope of the Agreement are reserved by the Agreement for the arbitrator, as the Agreement incorporates the Commercial Mediation Rules of the American Arbitration Association. Agreement at 14. The American Arbitration Association's Commercial Mediation Rules give the arbitrator authority to rule on the scope of the Agreement. *See* Def. Mem. at 10.

9

in violation of federal and state law, and because the moving defendants have misrepresented her financial compensation. Pl. Opp. at 1–2; Pl. Opp. Decl. ¶¶ 1–3. Each of these arguments will be addressed in turn.

**B. The Agreement Is Neither Procedurally Nor Substantively Unconscionable**

Barrios-Contreras argues that the Agreement is both procedurally unconscionable "due to the disparity in bargaining power between Plaintiff and Defendant at the time the agreement was signed" and substantively unconscionable "because the terms of the agreement are excessively favorable to the Defendant." Dkt. No. 65 at 2. The Second Circuit has summarized the relevant New York law, which governs here,[9] on unconscionability as follows:

> Under New York law, a contract is unconscionable when it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable . . . according to its literal terms." *Gillman v. Chase Manhattan Bank, N.A.* 73 N.Y.2d 1[, 10], 537 N.Y.S.2d, 534 N.E.2d 824 (1988). Generally, there must be a showing that such a contract is both procedurally and [substantively] unconscionable. *See id.* "The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract[, per se]." *State v. Wolowitz,* 96 A.D.2d 47, 468 N.Y.S.2d 131, 145 (1983); *see also Desiderio v. National Ass'n of Sec. Dealers, Inc.,* 191 F.3d 198, 207 (2d Cir.1999) ("A contract or clause is unconscionable when there is an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." (quotation marks omitted)).

---

[9] The Agreement contains a choice-of-law clause stating: "This agreement and all related matters shall be governed by the laws of the State of New York[.]" Agreement ¶ 22(c).

*Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121–22 (2d Cir. 2010) (citation omitted). .

Courts have consistently held that the disparity in bargaining power between an employer and employee during contract formation, without other circumstances, does not meet the standard for procedural unconscionability. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 33 (1991) ("Mere inequality in bargaining power" not basis for declining to enforce arbitration agreements contained in employment contracts); *American Family Life Assurance Co. of New York v. Baker*, 778 F. App'x 24, 27 (2d Cir. 2019) ("neither the FAA nor New York law precludes the enforcement of employment contracts 'which make employment conditional upon an employee's acceptance of mandatory arbitration.'" (quoting *Ragone*, 595 F.3d at 121–22)); *cf. Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 384 (S.D.N.Y. 2002) (arbitration agreement procedurally unconscionable where employer "used high pressure tactics to coerce the employees into signing"). As Barrios-Contreras does not provide any evidence of duress or inappropriate pressure on the part of Big Fish in negotiating the Agreement, her argument that the Agreement is procedurally unconscionable fails.

Barrios-Contreras's contention that the Agreement is substantively unconscionable also lacks merit. Barrios-Contreras does not meet the high bar described in *Ragone* by providing any support for her claim that the Agreement was unconscionable, only stating in a conclusory manner that the terms of the Agreement excessively favored Big Fish. Pl. Opp. at 2; *Ragone*, 595 F.3d at 121–22;

11

*cf. Brennan*, 198 F. Supp. 2d at 383 (arbitration agreement substantively unconscionable where employer could unilaterally modify contract at any time and barred employee from proceeding with already pending sexual harassment claim).

Because Barrios-Contreras has not established that the Agreement was either procedurally or substantively unconscionable, the arbitration requirement should not be voided on these grounds.

### C. The Agreement Is Not Contrary to Federal or State Law

Barrios-Contreras also argues that the arbitration clause is contrary to both federal law and state law, specifically the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (the "EFAA"), Pub. L. No. 117-90, 135 Stat. 26, *codified at* 9 U.S.C. §§ 401–02, and Section 7515 of the New York Civil Practice Law and Rules ("C.P.L.R. § 7515"). Pl. Opp. at 1.

The EFAA prohibits the application of mandatory arbitration clauses to sexual harassment claims. 9 U.S.C. § 402. However, it only applies to disputes or claims that arise after March 3, 2022, the date of enactment of the EFAA. Pub. Law 117-90 § 3.[10] The latest incidence of sexual harassment alleged in the complaint took place on July 6, 2020. Compl. ¶ 39. Accordingly, the EFAA does not bar enforcement of the Agreement's arbitration clause, despite Barrios-Contreras's allegations of sexual harassment. *See, e.g.*, *Castillo*, 2023 WL 6690674, at *4

---

[10] The Public Law is "'congressionally enacted text' and provides the legal evidence of the law." *Castillo v. Altice USA, Inc.*, No. 23-CV-5040 (JLR), 2023 WL 6690674, at *3 (S.D.N.Y. Oct. 12, 2023) (quoting *Johnson v. Everyrealm*, 657 F. Supp. 3d 535, 559 (S.D.N.Y. 2023)).

("Because the discriminatory conduct and retaliation alleged did not occur after March 3, 2022 . . . the EFAA does not retroactively apply to the Complaint.").

C.P.L.R. § 7515 prohibits mandatory arbitration clauses in employment contracts that apply to any claim of discrimination. N.Y. C.P.L.R. § 7515(a)(2). However, C.P.L.R. § 7515 also states that it does not apply where its application would be "inconsistent with federal law." C.P.L.R. § 7515(a)(4)(b)(i). Courts have consistently held that the FAA displaces C.P.L.R. § 7515. *See, e.g., Whyte v. WeWork Cos., Inc.*, No. 20-CV-1800 (CM), 2020 WL 3099969, at \*5 (S.D.N.Y. June 11, 2020) ("The Supreme Court has specifically forbidden state legislatures from creating exceptions to the FAA like the one embodied in CPLR § 7515"); *Lee v. Engel Burman Grande Care at Jericho, LLC*, No. 20-CV-3093 (RPK) (RER), 2021 WL 3725986, at \*7 (E.D.N.Y. Aug. 23, 2021) (collecting cases).

Accordingly, neither the EFAA nor C.P.L.R. § 7515 prevents the enforcement of the Agreement's arbitration clause.

### D. Any Discrepancies in Defendants' Financial Records Are Not Relevant to the Motion to Compel Arbitration

In her reply declaration, Barrios-Contreras contends that defendants have been inconsistent in their statements concerning her compensation. Pl. Reply Decl. ¶ 1. In his initial declaration, Bronzino attested that Barrios-Contreras was paid "approximately $218,000" for her work on the show. Bronzino Decl. ¶ 11. In his reply declaration, he stated that this was an accounting error and she was actually paid approximately $168,797.54, and provided copies of checks and money orders totaling that amount. Bronzino Reply Decl. ¶ 3 & Ex. A. Barrios-Contreras argues

13

that she was actually paid only $118,000, that these discrepancies demonstrate a "pattern of negligence and intentional misrepresentation," and the errors "cast substantial doubt on the reliability of the information provided by the Defendant." Plaintiff Reply Decl. ¶¶ 1, 3.

These inconsistencies are irrelevant to the matter of arbitration. Barrios-Contreras has never challenged the authenticity of the Agreement or its terms as provided by Big Fish. Moreover, the amount of compensation Barrios-Contreras received is at best of secondary importance to the core substance of her allegations, which directly concern harassment and retaliatory termination, not her monetary compensation. Therefore, these discrepancies do not provide a reason to deny the motion to compel arbitration.

**E. Leave to Further Amend Should Be Denied**

Also pending before the Court is Barrios-Contreras's motion to further amend the complaint. Barrios-Contreras requests leave to amend pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. Dkt. No. 66 at 1. She proposes further amending the complaint to add a cause of action under 42 U.S.C. § 1981 and to "correct factual inaccuracies." *Id.* The moving defendants oppose this motion, arguing amendment would be futile as the proposed additional claims would still be covered by the Agreement's mandatory arbitration clause. Def. Reply at 2.

Rule 15(a)(1) allows a party to amend her complaint once as a matter of course within 21 days after serving the complaint or within 21 days after a responsive pleading has been served. *See* Fed. R. Civ. P. 15(a)(1). Where, as here, the time for amendment as a matter of course has passed, a party may amend its

14

pleading with the opposing party's written consent or with leave of the Court. Fed. R. Civ. P. 15(a)(2). "The [C]ourt should freely give leave [to amend] when justice so requires." *Id.* Nevertheless, "it is within the sound discretion of the [Court] to grant or deny leave to amend." *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009).

Certain factors, "such as undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party[,] . . . [and] futility of amendment," may justify a district court's decision to deny leave to amend, even in the case of a *pro se* litigant. *Williams v. Citigroup Inc.*, 659 F.3d 208, 213–14 (2d Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Harris v. TD Ameritrade Clearing Inc.*, No. 21-CV-8851 (MKV), 2022 WL 3544171, at *9 (S.D.N.Y. Aug. 18, 2022) (denying *pro se* plaintiff leave to amend as futile where claims subject to mandatory arbitration), *aff'd*, No. 22-1968-CV, 2023 WL 3332560 (2d Cir. May 10, 2023). Proposed amendments are futile when they "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)).

The moving defendants have the better of the argument. Any claim based on racial discrimination during Barrios-Contreras's employment would undeniably fall under the Agreement's arbitration clause, which covers "[a]ll claims, controversies or disputes arising out of, in connection with, or relating to this Agreement, the performance or breach thereof or default hereunder, whether based on contract,

tort, or statute[.]"). Dkt. No. 33-1 at 14. Section 1981 claims, like the one Barrios-Contreras proposes to add, have been ruled to be covered by similar language. *See, e.g., Ahmed v. Citibank, N.A.,* No. 19-CV-4439-(MKB) (SJB), 2020 WL 2988666, at *7 (E.D.N.Y. June 2, 2020); *Hong Wang v. Precision Extrusion, Inc.*, No. 18-CV-350 (FJS) (DJS), 2018 WL 3130589, at *4 (N.D.N.Y. June 26, 2018). Moreover, Barrios-Contreras already amended her complaint once, after the moving defendants had already filed their motion. Dkt. No. 37. Amendment of her complaint for a second time, when the Agreement requires that both her current claims and her proposed additional claims be resolved in arbitration, would thus be futile. *See, e.g., Gonzalez v. Cheesecake Factory Resturants, Inc.,* No. 21-CV-5017 (PKC) (SIL), 2024 WL 989881, at *8 (E.D.N.Y. Mar. 6, 2024) (denying leave to amend as futile where plaintiff would still be subject to arbitration agreement). Her motion for leave to further amend should therefore be denied.

**F. The Court Need Not Reach the Alternative Motion to Dismiss**

The moving defendants request that, should the Court not grant their motion to compel arbitration, it instead dismiss the case under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Def. Mem. at 11. Because the case should be stayed pending arbitration, the Court need not reach the motion to dismiss at this time.

### III. CONCLUSION

For the foregoing reasons, the case should be stayed under 9 U.S.C. § 3 and Barrios-Contreras compelled to resolve her claims in arbitration. The moving defendants' motion should be granted and Barrios-Contreras's motion for leave to further amend should be denied. The Court should also *sua sponte* dismiss without

16

prejudice the claims against the unserved named defendants, as well as the unnamed defendants, under Rule 4(m).

## PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jessica G. L. Clarke, United States Courthouse, 500 Pearl Street, New York, NY 10007. Any requests for an extension of time for filing objections must be directed to Judge Clarke.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: July 17, 2024
    New York, New York

_____
JAMES L. COTT
United States Magistrate Judge